UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **DAVID BLAKE TRAHAN** | **CASE NO. 2:23-CV-00287** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LEGACY ROOFING & CONSTRUCTION L L C ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 23] filed by plaintiff David Blake Trahan. Defendants Rhett Hansen and Legacy Roofing & Construction LLC (collectively, "Legacy") oppose the motion. Doc. 44.

### I.
### BACKGROUND

This suit arises from damage to plaintiff's residence in Iowa, Louisiana, during Hurricane Laura. At all relevant times the home was insured under a policy issued by State Farm Fire & Casualty Company ("State Farm"). Doc. 44, att. 2, ¶ 5. State Farm produced an estimate on December 14, 2020, valuing the replacement cost of plaintiff's losses under Coverage A (Dwelling) at $133,408.40. Doc. 44, att. 5. Five days later, plaintiff entered into a Contingency Agreement with Legacy. Doc. 44, att. 4. Under the Agreement, plaintiff authorized Legacy to communicate directly with State Farm and obtain an "Agreed Price" approval from the insurer. *Id.* He also authorized Legacy to:

> Proceed with the repairs or replacements within 30 days of approval of funding. Upon funding, I will execute with [Legacy] for the repairs and or replacement specified by my insurance company for a price equal to but not exceeding the full amount of my insurance proceeds.
>
> I understand that there are no charges for these services other than the awarding of the contract and, I hereby award the contract, contingent upon the approval of my insurance company. Contingent means that if there is no approval, there is no contract. My out of pocket expenses will not exceed my deductible unless specifically authorized by me in the subsequent contract or in a written change order. Should [Legacy] succeed in obtaining an approval for my repairs or replacements and I fail to execute a contract within 10 days of funding, I will pay [Legacy] documentation and consulting fees not to exceed 20% of the full amount of the settlement.

*Id.*

On February 3, 2021, plaintiff paid Legacy a deposit draw of $40,000 to order materials and begin the work approved by State Farm at that time. Doc. 44, att. 2, ¶ 9. At this point some work from the original State Farm estimate, including demolition, replacement of the roof, and removal of the fence, had already been completed by someone other than Legacy. *Id.* at ¶ 8. Legacy began work that month but needed State Farm to increase the scope. *Id.* at ¶ 10. In May 2021, State Farm revised the scope to include a new HVAC system, laminate wood floors, and replacement of exterior bricks. *Id.* at ¶ 11; doc. 44, att. 5. The new estimate, however, did not include all of the necessary approvals for plaintiff's cabinetry and electrical repairs. Doc. 44, att. 2, ¶ 11. Plaintiff issued a second draw deposit of $50,000.00 to Legacy on June 30, 2021. *Id.* at ¶ 13. Text messages between plaintiff and Legacy reflect that work on the house was underway between June and September 2021, though plaintiff repeatedly raised issues with the coordination of subcontractors and Legacy cited delays due to additional approvals from State Farm, price increases, and Hurricane Ida. Doc. 44, att. 6; doc. 44, att. 2, ¶¶ 14–18. In October 2021,

Legacy asked plaintiff to execute a Construction Agreement relating to the remainder of the job. Doc. 44, att. 2, ¶ 19; doc. 44, att. 7. Plaintiff refused and responded through counsel on October 14, 2021, with a cease-and-desist letter, which described Legacy's work as substandard. Doc. 44, att. 8.

Later that month, State Farm issued a revised estimate valuing the replacement cost of work under Coverage A at over $240,000.00. Doc. 44, att. 9. Based on this estimate, Legacy values the cost of its completed work at $65,281.49. Doc. 44, att. 10; doc. 44, att. 2, ¶ 22. It also shows that it paid $10,360.48 for services to increase the scope of plaintiff's claim, in addition to spending 90 hours of labor on consulting services between December 2020 and October 2021.[1] Doc. 44, att. 2, ¶¶ 26, 28; doc. 44, atts. 14 & 16.

Meanwhile, plaintiff contends that no further payment is owed. He filed a Petition for Breach of Contract and Damages in state court on April 21, 2022. Doc. 1, att. 8. After plaintiff filed a motion for summary judgment in that suit, seeking damages in the amount of $112,628.71, Legacy removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Plaintiff now moves for summary judgment, reasserting his claim for $112,628.71 in damages due to Legacy's alleged failure to timely commence and complete the work, as well as its failure to repair faulty work. Doc. 23. Legacy opposes the motion. Doc. 44.

---

[1] Legacy values its own time on these services at $40,000.00 but reduces its consultation expenses to $29,697.30, pursuant to the Contingency Agreement. Doc. 44, att. 2, ¶ 28; doc. 44, att. 16. Accordingly, Legacy claims that it is still entitled to over $10,000.00 in addition to the $90,000.00 already paid by plaintiff. Doc. 44, att. 2, ¶ 29. The parties make various assertions regarding Legacy's entitlement to this fee. But Legacy has made no counterclaim and the court will not reach that issue on plaintiff's motion, which revolves around his own entitlement to damages arising from Legacy's alleged breach.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *E.g.*, *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that a contract is read for its plain meaning and operates as the law between the parties. *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 439 (5th Cir. 2002). "[W]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Apache Deepwater, LLC v. W&T Offshore, Inc.*, 930 F.3d 647, 656 (5th Cir. 2019) (internal quotations and alterations omitted). This rule "does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties." *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994). Additionally, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. The elements of a breach of contract claim are the existence of a contract, a party's breach thereof, and resulting damages. *Favrot v. Favrot*, 68 So.3d 1099, 1108–09 (La. Ct. App. 4th Cir. 2011). The party claiming rights under the contract bears the burden of proof. *Id.* at 1109.

Plaintiff argues, based on his affidavit, attached photographs, and invoices from subsequent contractors, that he "paid [Legacy] $90,000.00 to fix and repair his home" but that Legacy breached this agreement by failing to timely or adequately complete the work.

Doc. 23, att. 3, ¶ D. Plaintiff further asserts that he has incurred $112,628.71 in damages because he had to hire other contractors to finish and repair Legacy's work, and because he had to pay Legacy's subcontractors even though he had already provided sums for Legacy to do so. *Id.* at ¶¶ G–J. But as Legacy points out, the Contingency Agreement provided that Legacy would repair the property for a sum not exceeding that which was provided by State Farm. State Farm's estimate provided that the replacement cost value of repairs to the property was over $240,000.00. Plaintiff paid Legacy $90,000.00 for the repairs it completed. Even to the extent plaintiff paid an additional $112,628.71 to repair and complete Legacy's work, there is at least an issue of fact as to whether he suffered any loss when the total price of the project came in below State Farm's estimate.[2] And plaintiff produces nothing from which the court can infer that Legacy agreed to complete the entire project for the preposterous sum of $90,000.00. To the extent plaintiff would claim a breach of an implied warranty based on Legacy's failure to complete the project in a workmanlike manner, the record also shows issues of fact: Legacy was fired from the project via a cease-and-desist letter before it could finish any of its work. And there are no invoices attesting to the work that was allegedly completed by that date. Thus, the court cannot credit that the photographs provided are indicative of its failure to perform.[3] The text messages and

---

[2] Legacy acknowledges that roof replacement, demolition, and fence removal had already been accomplished by another person or entity before Legacy began work. Doc. 44, att. 2, ¶ 8. The estimate valued roof replacement at $20,664.33 and included $2,480.58 for general demolition and debris removal for which the owner had already been invoiced and smaller amounts for tear-outs in other rooms. Doc. 44, att. 9. There is no line item corresponding for fence removal. Even with these amounts totaled and added to the $90,00 provided to Legacy and $112,628.71 in claimed damages, the amount still falls below the total RCV estimated by State Farm.

[3] The photographs show a house half-gutted, with fixtures awaiting installation. There are also close-ups that appear to show recently repainted trim and window frames with minor chips. All of these could have been and should have been remedied by the end of the project.

affidavits also show two sides to plaintiff's claim of delay. Accordingly, genuine issues exist as to whether there was any breach of Legacy's obligations and whether any damages resulted.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 23] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 19th day of September, 2025.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**